MADSON, Appellant, v. BALLOU, et al, Respondents.

(260 N. W. 831.)

(File No. 7607. Opinion filed May 20, 1935).

*Danforth & Seacat,* of Mitchell, and *R. M. Sheild,* of Salem, for Appellant.

*L. J. Ballou,* of Bridgewater, pro se.

*C. H. McCay,* of Salem, for Appellees Philip McMahon and Joe H. Leiferman.

ROBERTS, J. On June 13, 1925, defendants Chris Sonnichsen and wife executed and delivered to the Union Savings Association of Sioux Falls, a mortgage as security for the payment of a note for $2,500 on residence property in Bridgewater, S. D. On June 6, 1926, these mortgagors executed and delivered a second mortgage on the same property to the Farmers' National Bank of Bridgewater as security for $3,992. F. B. Carter, as receiver of the First National Bank of Bridgewater, recovered a judgment against Sonnichsen for $1,516.66 and costs, and this judgment was docketed on August 19, 1927. The Union Savings Association made an assignment of its mortgage to the Farmers' National Bank of Bridgewater, which was duly recorded. This bank subsequently obtained two mortgages, dated January 25 ,1929, from Sonnichsen and wife, one for $2,500, and another for $4,091, and executed satisfactions of the two mortgages of record. The satisfactions were filed on February 7, 1929, which was also the date of the filing for record of the two new mortgages. The mortgage for

$2,500 was assigned by the bank to defendants A. E. Gammons and M. S. Gammons, and upon foreclosure of this mortgage the property was purchased by defendant Leiferman for a nominal sum, and costs. By reason of the bank's indorsement, these assignees have filed a claim with plaintiff receiver for the balance due on the note secured by the mortgage.

The judgment obtained by the receiver of the First National Bank of Bridgewater was assigned by the judgment creditor on April 19, 1929, to the Sioux Falls Investment & Security Company and P. M. Young. Defendant Ballou, thereafter having procured an assignment of the judgment, executed and delivered an assignment of his interest and title in and to the judgment to defendant McMahon. This action was brought by the receiver of the Farmers' National Bank to reinstate the mortgage liens alleged to have been released through mistake, to have the foreclosure sale of the mortgage for $2,500 vacated and set aside, and for the foreclosure of the bank's mortgage as a superior lien to the judgment.

It was found by the trial court that defendant McMahon acquired an assignment of the judgment, relying upon an abstract of title prepared by him as an abstracter and upon the satisfactions of the mortgages of record, and believing that the judgment was a first lien upon the real property in question; that he did not have notice or knowledge of any kind whatsoever of any claim on the part of the Farmers' National Bank that the mortgages were superior to the lien of the judgment. Defendant McMahon was adjudged to be a prior and superior lienholder. The appeal being from the judgment only, the sufficiency of the evidence to sustain the findings is not questioned.

■■ It is a general rule that the cancellation of a mortgage on the record is not conclusive as to its discharge or as to the payment of the indebtedness secured thereby. Where a mortgage has been released or satisfied through accident or mistake, it may be restored in equity and given its original priority as a lien in the absence of paramount equities. Upton v. Hugos, 7 S. D. 476, 64 N. W. 523; Ricker v. Stott, 13 S. D. 208, 83 N. W. 47; Bank of Ipswich v. Brock, 13 S. D. 409, 83 N. W. 436; Home Investment Company v. Clarson, 21 S. D. 72, 109 N. W. 507; Bennett v. Campbell, 48 S. D. 285, 204 N. W. 177, 178; Note 33

A. L. R. 149. This court in the case last cited quoted with approval the following language from the opinion of the court in Strehlow v. Fee, 36 N. D. 59, 161 N. W. 719: "The rule of law, indeed, is well established that where an instrument has been surrendered or discharged, or an incumbrance or charge has been satisfied through mistake, the party making the same is entitled to be replaced in his original position, provided only that other creditors have not been induced by the action of the plaintiff or petitioner to change their position, and have not lost any substantial and material rights by such action."

From the facts appearing in the findings before us, as we have stated, defendant McMahon acquired the judgment lien in reliance upon the satisfactions of the record, and was without knowledge of any claim of priority on the part of the bank. Appellant, relying on Kohn v. Lapham, 13 S. D. 78, 82 N. W. 408, which held that a judgment creditor is neither a purchaser nor an incumbrancer within the meaning of the recording statutes of this state, contends that McMahon as the assignee of the judgment stands in no better position than his assignor. To this contention it may be answered that the exception to the above rule of law is not confined to purchasers and incumbrancers. Moreover, the law does not require that the assignee for value of a thing in action take it subject to the latent equities of third persons of which he has no notice; he takes subject to all equities existing in favor of the debtor. Sections 742, 2307, Rev. Code 1919; 5 C. J. 974; First Nat. Bank of Bridgeport v. Perris Irr. Dist., 107 Cal. 55, 40 P. 45. Defendant McMahon is in somewhat different position than the original judgment creditor. The latter parted with nothing to acquire its lien; the debt was contracted before the lien was obtained. If it may be said that the equities between the original judgment creditor parting with nothing to acquire its lien and the mortgagee bank parting with value on the face of the record are not analogous, yet an assignee who has parted with value upon the face of the record and without notice acquires new equities which cannot be ignored when a mortgagee seeks to invoke equity jurisdiction to restore his original mortgage released through accident or mistake.

Appellant urges that while the record indicated that the original mortgages had been discharged, it also indicated that other

mortgages had been given to secure the same debts, and that the record imparted notice that the original mortgages were not extinguished; that this is not a case where the assignee of an intervening lien acquires the same for a valuable consideration in good · faith while the satisfactions were on record and prior to the recording of subsequent mortgages and without knowledge, actual or constructive, of the right of the mortgagee to have the satisfactions set aside and the mortgages reinstated as prior liens. The question is whether, under the findings, defendant McMahon had notice of circumstances sufficient to put a prudent person upon inquiry. If facts are sufficient to put a purchaser of a title or lien upon inquiry of any adverse right or equity of a third party, his want of diligence in making such inquiry is equivalent to a want of good faith. We have not been referred to any case holding that a purchaser of an intervening lien who has paid a valuable consideration and was in fact innocent of any guilty knowledge was put on inquiry as to whether a discharged mortgage was preserved by the execution of a subsequent renewal mortgage.

In the case of Washington County v. Slaughter, 54 Iowa 265, 6 N. W. 291, it was held that a person who after the discharge of a mortgage purchased a judgment which was rendered after the execution of the mortgage and before the execution of a new mortgage was not put upon inquiry, that the original mortgage was not extinguished; that when a person purchases a judgment and finds that a mortgage prior to the judgment has been discharged of record he is not bound to look further to ascertain if possibly the lien of the discharged mortgage may have been preserved by the execution of another mortgage to secure the same debt. In the case of Morris v. Beecher, 1 N. D. 130, 45 N. W. 696, 698, a mortgagee in a lost and unrecorded mortgage executed and recorded a certificate that such mortgage had been paid and satisfied. It was contended that the fact that there appeared to have been recorded about the time of the execution and recording of the satisfaction another mortgage for about the same amount as the unrecorded mortgage given to the same mortgagee by the one who had assumed the unrecorded mortgage was sufficient to put the assignee for value of a second mortgage upon inquiry as to whether the unrecorded mortgage had in fact been paid and satisfied. The law applicable to such facts is stated by the court as follows:

"Although the new mortgage recites that the property is free from incumbrances, yet this cannot be held to be sufficient to make it the duty of Barnes [assignee] or his attorney to inquire whether it was not intended as a mere evidence of the lost mortgage, because the mortgagee in the new mortgage had precluded all necessity for inquiring by executing with his own hand, and placing upon the public record, a statement that the lost mortgage had not only been satisfied, but also paid. He was guilty of gross negligence in making and recording such a statement without examining the record, to ascertain whether there was not an intervening incumbrance, which an innocent purchaser might subsequently buy as a first lien, relying on the statements that the prior lien had been paid and satisfied. It is true that the recording of a subsequent lien is no notice to a prior incumbrancer; but it is difficult to see how this principle will permit a prior mortgagee to cancel the record of his mortgage without examining the records, and then insist upon the mortgage as a prior lien as against an innocent purchaser of a second mortgage, who relies upon the satisfaction as giving the mortgage he is about to purchase priority of lien."

■ The notice must be clear and undoubted as was expressed by this court in Betts v. Letcher, 1 S. D. 182, 46 N. W. 193, 196: "The protection which the registry law gives to those taking titles or security upon land upon the faith of the records should not be destroyed or lost except upon clear evidence showing a want of good faith in the party claiming this protection, and a clear equity in him who seeks to establish a right in hostility to such person." See, also, 23 R. C. L. 262; Pickford v. Peebles, 7 S. D. 166, 63 N. W. 779; U. S. v. Detroit Timber Lumber Co., 200 U. S. 321, 26 S. Ct. 282, 50 L. Ed. 499; U. S. v. Route County Coal Co. (C. C. A.) 248 F. 485. In the case last cited, the court held that a record does not impart notice of inference which could only be drawn by a comparison of the dates of instruments of record. It is not enough that an intending purchaser might entertain a mere suspicion of any unknown equity or interest. There must be some clear neglect to inquire after having some notice of some definite equity or interest in another.

■ Intervening rights have accrued, and must be protected. But it would be inequitable to permit defendant McMahon to have the benefit of the entire amount of the judgment lien as against

plaintiff. The bank was negligent in failing to discover the judgment lien, but, being ignorant of the existence of the judgment and taking the new mortgages as renewals, is entitled in equity to have the liens restored and the priority preserved upon payment of $500, the amount paid by defendant McMahon for an assignment of the judgment, and interest. Chase v. McKenzie, 81 Or. 429, 159 P. 1025. The judgment appealed from is reversed, and the cause remanded, with directions to the trial court to enter conclusions of law and judgment for plaintiff in conformity with this opinion upon payment to defendant McMahon or his successor in interest of the amount stated. No costs to be taxed on this appeal.

WARREN, P. J., and POLLEY and RUDOLPH, JJ., concur.

CAMPBELL, J., concurs in result.